William Gary, Plaintiff Appellant, the Midwest Penalty, and Andrew Towne, M&T Defendant's Athletes, arguing on behalf of the Plaintiff's Appellant, Mr. Michael B. Gunsberg, arguing on behalf of the Defendant's Athletes, Mr. David J. Canco. Mr. Gunsberg, you may proceed. Thank you, Your Honor. Good morning. Please leave the court. The evidence is uncontroverted that Laura Martinez was under a legal disability at the time that she was diagnosed with PML in November of 2012. There is certainly an issue of fact in that regard. We've said it was uncontroverted. There is an issue of fact in that regard, correct me if I'm wrong. Well, I believe that based on the evidence that was presented to the trial court, it is uncontroverted. However, at the very least, there is an issue of fact. I don't believe there is any evidence that was presented that refuted the sworn affidavit of the plaintiff's treating neurologist, Dr. Dusan Stefanski, to that effect. What about the prior complaints that alleged that your client became aware of the drug notices at a time where now you're claiming she was disabled? Right. The original and the refiled complaints both alleged that she did not become aware that the defendants had violated the standard of care until after she became aware of the medication warning of Tysabri in June of 2015. I don't believe that she ever personally became aware of the medication warnings of Tysabri herself. I think that that was her lawyer, when a lawyer became involved and did some investigations and discovered the medication warnings of Tysabri, I believe that that is the allegation of the complaint. I think based upon the sworn affidavit of Dr. Stefanski, she was never in a position to understand the medication warnings of Tysabri once she became diagnosed with the brain infection of PML in November of 2012. So I understand that that's what the allegation is, and certainly by operation of law, she would be deemed to have knowledge of the cause of action as of the date of the filing of the complaint, which was July 15th of 2015. In reality, based upon the sworn testimony of her physician, she did not. But I believe that, and that evidence alone, that being the sworn affidavit of the treating neurologist, that she was severely mentally disabled as of November of 2012, on that evidence alone, the court should have denied a summary judgment on defendant's statute of limitations, affirmative defense. The trial court basically disregarded the amended complaint and ruled on the refiled complaint allegations, correct? That's correct, Your Honor. And I submit on behalf of the plaintiff that that was improper, that the plaintiff was granted leave to file a first amendment complaint alleging that she was under a legal disability. And specifically, when the court set a briefing schedule after the amended complaint was filed on May 1st of 2018, the order was that any motion of the defendant attacking the pleadings was to be directed to the first amended complaint. That was not done. The motion for summary judgment, which incorporated a previously filed combined motion to dismiss, was not directed to the first amended complaint. Instead, it was directed to the earlier pleadings, the original and the refiled complaints. It's the position of the plaintiff that that was improper, that the defendant disregarded the court's order directing that any motion be directed to the first amended complaint, that the original and refiled complaints had essentially been abandoned, withdrawn, and that they were no longer the operative pleading in the case. The operative pleading was the first amended complaint to specifically allege that she was under a legal disability as of the date that she was diagnosed with PMO in November of 2012. Did the trial court err in allowing the filing of the amended complaint under the Loyola practice? My position, not at all. The court had discretion in that regard. I believe that none of the factors in the Loyola case were satisfied. I think that with regard to the defense argument that the court abused its discretion in allowing the amendment, I believe that none of the Loyola factors establishing abuse had been satisfied. I think that the court properly, in this case, exercised its discretion in allowing the amendment. The trial court granted summary judgment based upon essentially a 2619 argument that there was a statute of limitations violation. Is that not correct? Yes. And the statute of limitations violation revolved around whether or not there was a stay or a suspension in the running of the statute, or whether it ever commenced. And so it went at what time based upon whether or not your client was disabled or was not disabled. Is that correct? So I think that the court made specific findings of fact, or at least said that there were no genuine issues of material fact as to certain facts. Well, the point is that he made certain findings of fact relative to whether or not she was or wasn't disabled as of a certain date, and decided that based upon his findings, she wasn't disabled as of a certain date, and therefore the statute started running and you were late in filing. Is that not correct? Yes, I believe that the court made a finding that she was not disabled. And it's your contention that there's a material issue of fact because in addition to the inferences or implications of prior pleadings, you have medical experts' testimony in a form of an affidavit that your client was disabled for some period of time such that the statute of limitations had not run. That's correct. And is it your contention that when it goes back for further proceedings, that if it goes to trial, it's up to the jury or the trier of fact to determine when and if the affirmative defense has been established insofar as whether or not your client was or wasn't disabled such that the statute of limitations didn't run? I believe that those are issues of fact for a jury to decide, yes. Relative to the 619 affirmative defense relating to the running of the statute of limitations, as implicated or as affected by whether or not your client was or was not disabled. And therefore, based upon that fact, the dates of computation for the running of the statute would be dependent on which party the jury believed insofar as whether or not your client was disabled from the date of her diagnosis or she wasn't disabled as of the date of her diagnosis. Well, I understand what Your Honor is saying, and I agree that there is a question of fact for the jury to decide as to when she became disabled. But respectfully, it's my position that the pleadings that were abandoned will not be an issue should this case go to trial. The case will be tried. And I think it's your conviction that she's still disabled, isn't it? Absolutely, Your Honor. Absolutely. And I believe that when this case goes to trial, it will be tried based on the issues framed in the First Amendment complaint. Well, the other complaints could come in as impeachment, could they not? If Your Honor can give me an example, I'm not certain that how the other complaints… Well, we have judicial admissions and we have evidentiary admissions. Yes, Your Honor. If this had been a verified complaint that was abandoned later but still a verified complaint, that would be a judicial admission, correct? I agree, Your Honor. If this was an unverified complaint that you're arguing was abandoned, correct? That's correct, Your Honor. Those allegations would then still be evidentiary admissions, would they not? They could be, Your Honor. Right. So, I mean, they could come into play during the trial. That's conceivable. I mean, it's up to the trial judge. If I were trying the case, I would be opposing the introduction of that, but I can tell you that that would not be an issue. I'm sure defense would probably raise that before the trial court. In your opinion, did the trial court consider the prior pleading a judicial admission or an evidentiary admission? Well, it appears to me that the trial court considered it a judicial admission, not an evidentiary admission, because the trial court used the example of comparing the allegations contained in the original and refiled complaints to the use of an affidavit to refute sworn deposition testimony where you have someone testifying under oath in a deposition and then comes back with a sworn affidavit trying to refute what was stated in the deposition. And the court equated the two. And that's why the position that the plaintiff took was that that's absolutely not permissible. It's not a judicial admission. It's an unverified complaint. The plaintiff had the right to seek an amendment, and in this case the court agreed and allowed the amendment. And I think there was two judges that allowed that. Is that correct? Well, it was Judge Venus is the circuit court judge who was involved in making all of the rulings. What happened is that I had initially filed a motion for leave to amend the complaint after the probate court from LaSalle County had made a determination and adjudication that Laura Martinez was legally disabled. At that point within a few days, I filed a motion for leave to amend the complaint, substituting the mother who was appointed as the guardian as plaintiff, and to amend the pleadings to conform with anticipated proofs. And so at that time, that was the motion that was filed. I noticed it for hearing. I provided defense counsel with a copy of it. Defense counsel saw where I was going with that and then decided to file a motion to dismiss directed to the original and refiled complaint. I'm going to report the judge. Initially, Judge Venus entered a continued plaintiff's motion to file an amended complaint and then set a briefing schedule and defendant's motion to dismiss. I filed a motion for reconsideration. Judge Venus was provided a copy, had been provided a copy of the proposed amended complaint. Judge Venus had reconsidered his position, and getting back to what Your Honor had just asked me, it just turned out that on that particular day, Judge Venus, I believe, was involved in a jury trial and Judge Murphy was sitting in for him, but both of them had spoken to each other, and Judge Venus specifically told Judge Murphy that he was granting the motion for reconsideration, allowing the amended complaint. So, yes, there were two judges involved, but it was Judge Murphy who was basically taking direction. He was an avatar or something like that? Well, I think the record speaks for itself as to what Judge Murphy's position was in that regard. Suffice to say that the motion for reconsideration was allowed. The plaintiff was allowed to file the first amended complaint, which was done that very day, and the order directed that any motions be directed to the first amended complaint. And so it's my position that there was, well, at no time since the filing of the first amended complaint has the defendant attacked the first amended complaint and indicated that they were entitled to summary judgment on the allegations contained in that complaint. The way the trials court in this case treated the first two complaints, wasn't that similar to the way the federal court treated earlier complaints in the state court in Watkins? No, I disagree, Your Honor. I think that Judge Venus did not fully understand the rulings in the Watkins cases. There were two cases, a state case and a federal case, and the state case, although there were some issues with regard to the question of legal disability, was in the context of an impermissible second refiling of a complaint. In that case, the plaintiff tried to use legal disability as a sword, if you will, and tried to refile the complaint once and then refile the complaint twice, which was impermissible, and then tried to argue that the first complaint refiling was a nullity because the plaintiff was under a legal disability. And the court, you know, the ruling on that case turned on a very specific issue, which was that this was an impermissible second refiling of the complaint, which is not an issue in this case at all. And as a matter of fact, in that Watkins state court case, the court actually addressed the fact that there was evidence of disability, but the ruling was specific because it was an impermissible second refiling. The federal case, in that case the federal court took judicial notice of the fact that the plaintiff had filed that original complaint, and it was 2010 or whatever, in state court. That's how those cases were decided, not on the issue that we're talking about here. Your time is up. You'll have an opportunity to make your bubble. Thank you. Mr. Cahill, you may proceed. Thank you. Good morning. May it please the court, David Cahill on behalf of the defendants in Appalese, Midwest Neurology, LTD, and Dr. Andrew Ta. This case is not and never has been about whether or not Laura Martinez is or ever has been legally disabled. And when Judge Finis made his ruling, I'll just cut to the chase if you don't mind my phraseology. It is our position that the plaintiff never should have been granted leave to file the First Amendment complaint. We believe that it was not proper, given the Loyola factors, and that we were entitled to a hearing with respect to the first two complaints, which were filed in her own name with no allegation of legal disability. And both of those complaints, filed in July of 2015 and October of 2016, specifically and unequivocally allege that she discovered her cause of action when she, Laura Martinez, discovered the medication warnings of Tysabri in June of 2015. Would you agree that the First Amendment complaint did not adopt or incorporate by reference the refiled complaint or the original complaint? It doesn't specifically state it's adopting or incorporating it by reference, but the court can take notice of the fact that many of the allegations are identical. I understand that, but I mean, under Foxcloth, I think you would agree that if you file a complaint and you don't incorporate by reference or otherwise adopt the earlier filings, they're abandoned. You would agree with that, correct? Generally, yes. So if we have a complaint that was allowed to be filed, why is the trial judge ruling on the first complaints that have been abandoned in this case? Because the First Amendment complaint should not have been filed. That's number one. I'll get to that. But the answer, what you just asked me, it's not timely because it doesn't relate back. But the threshold issue, and we make this point in our brief, if you look at the transcripts of the hearings in this case, it's abundantly clear what Judge Venus intended. What should have happened in all candor is the guardian should have been substituted as the party plaintiff in the original complaint. Which doesn't take a new complaint to do that. Correct. Right. But that's what he intended by every ruling he made. And I cite the court to page 29 of the report of proceedings on April 17, 2018, where the court says, this is lines 18 through 20, what I don't want to do is allow something that alters the specific allegations of the complaint that he is attempting to attack. And this was at the point in time where he wasn't allowing the filing of the First Amendment complaint. He wanted us to have the opportunity to have a hearing on the merits, on the invocation of the discovery rule concerning the timeliness of the cause of action. Then we go to the hearing on the motion. Right, but the motion to reconsider was granted, wasn't it? Well, and if I could just finish my point at the, I'll get to that. On June 21 of 2018, we have the hearing on the combined motion to dismiss and motion for summary judgment. And Judge Finis again states that the amendment is simply allowing the guardian to step in. We go to the hearing on the motion for reconsideration, which Justice Berkey just alluded to, and Judge Finis makes it abundantly clear, this is the report of proceedings dated October 18, 2018, that it was at the court, I'm quoting line 20, beginning on line 20, the court allowed leave to amend for the purpose of properly designating the amended real party in interest, not for the purpose of contradicting the allegations of the prior complaint so as to provide a basis for defeating the motion for summary judgment. Judge Finis, I think, clearly recognized that under the Loyola factors, a new first amended complaint, a new complaint with these new allegations should not have properly been before the court. And when the motion for reconsideration was granted, I objected. We didn't actually have a hearing. Judge Finis was in a jury trial. Judge Murphy told us that he had spoken to Judge Finis and that Judge Finis had said, yeah, let him, you know, file his amended complaint. That's all we know is what we were told. And then counsel keeps talking about an order was entered that required us to respond to the first amended complaint. Well, it was a typical order that said we had 28 days to answer or plead, and we did attack the first amended complaint. If you read our motion, it's right in the first or second paragraph. We attacked it as being untimely. And we did adopt and incorporate our prior motion. So, you know, this case gets to the heart of the question, don't pleadings have consequences? Our position is these are admissions. Even an evidentiary admission is binding if it's not. Yes, Your Honor. It seems to me that you haven't addressed the irony involved in if a person is disabled, do they know they're disabled? And if they know they're disabled, when do they learn of it? There is an affidavit by a doctor, a medical expert, who says, which I think is probably consistent with the type of injury that this woman experienced, as evidenced by the fact that she couldn't answer questions, and the judge decided that she wouldn't be allowed to testify because she wasn't competent. So then the major question is, when did she become disabled? You're claiming that she became disabled based upon the allegations in the complaint, and there's other evidence to suggest the contrary. And Judge Fainest based his rulings on the prior pleadings and disregarded the other evidence that was presented relative to the summary judgment motion relating to 619. Well, everything you've said is, I think, probably consistent with general precepts or concepts of law, but there is an underlying conundrum here, and that is this woman contracted a virus that basically turned her into a slowly, deprecating, incompetent woman who was going to die from brain damage, and the only question seems to be, at least insofar as whether or not the statute of limitations ran or didn't, is when was she disabled for purposes of determining when the statute of limitations would start? And it's one thing to say something about a pleading, but if this pleading wasn't verified, so it doesn't become a judicial admission. But I think it's an evidentiary admission. It may be, but the thing is, is that it's an evidentiary admission on the left, and there is an expert opinion on the right. And the real conundrum is, if a person is disabled, and I've experienced this conundrum in a slightly different twist. I used to prosecute emergency commitments, and the law at one time was that a person subject to involuntary commitment could not waive defects in service. And why was that? It was because they were in need of commitment. They weren't fully competent. Well, the Supreme Court came down with several decisions that basically said no, an incompetent can, in fact, waive defects in service. But the conundrum is still there. If you are incompetent, how can you do something, even if you allege in an unverified pleading that you are incompetent? And I'm not even sure that she alleged that she was competent. I think she just alleged that she became aware of the problem. Well, and I don't think it's mutually exclusive. I think you can become aware of a cause of action and be legally disabled under the definition. And, by the way, to correct the record here, PML does not cause a slow deterioration and permanent brain damage and cognitive deficits. It's an infection. And in her case, it caused speech aphasia. It caused what? Speech aphasia. That's a person who has difficulty. They can understand a question, but they have difficulty expressing an answer to the question. So the fact that somebody has PML doesn't mean they're legally disabled. She also has MS, which, okay, MS is a progressive, deteriorating neurologic disorder. She had it when she first started treating with my client in 2008. But many people have MS and are not legally disabled. Okay, the problem with MS is it's progressive, and as their life goes on, and not every case, but in some cases, the person's cognitive abilities can decline. So here we have a person who filed suit in her own name, cognizant of her cause of action, and explains exactly how it is she became cognizant of her cause of action. The first time there's an allegation of legal disability is on May 1 of 2018. Now, this is almost three years after the lawsuit was filed. If she became legally disabled after the statute of limitations has run, and it ran in 2014, it's irrelevant. It's true, but I thought the affidavit did not indicate what you just said. I think it indicated that the doctor indicated that she had become disabled much earlier. Dr. Stefosky's affidavit indicated he believes she was disabled, put quotes around that. As of November of 2012, Dr. Tom, my client, testified in his deposition that when he last saw her in November of 2013, she was not legally disabled. But this was never about, in the lower court, determining an issue of fact in that regard. It was about the pleadings, two complaints, represented by counsel, invoking the discovery rule. Respectfully, and say this respectfully, we obliterate that invocation of the discovery rule with evidence, both written and oral testimony, about all the information she was given concerning Tysabri. And a few days after we filed our motion, the motion for leave to file the amended complaint is filed, and that's what Judge Finis was dealing with. And I objected to the amended complaint. So the question is, under the Loyola factors, why is it proper to allow the filing of the first amended complaint? And our position is it's not. Why wasn't this filed earlier? She's represented by counsel since sometime before July of 2015, and now they're claiming she's legally disabled since back in November of 2012, but her lawyers didn't know that? I mean, I've never had a case like this. I'm quoting from this court, one of this court's, I guess it's an order so I won't say the name of the case, but you're quoting precedent, a legal disability exists when a person completely lacks understanding or capacity to make decisions or to communicate his decisions and has a total inability to manage his estate or financial affairs. And the cite is that that order is quoting from a published opinion, BASHAM, B-A-S-H-A-M versus Hunt, 332 L.F. 3rd, 980 at 989. And there's other precedent, and we cite those cases in the brief as to the meaning of legal disability. So our position is the first amended complaint never should have been filed in the first place. It was impermissible. It wasn't timely. There's never been an explanation ever why they waited almost three years. You don't consider the first amended complaint an explanation, even though you think that it's improper? I don't consider it an explanation for why her lawyers, she's represented by counsel, didn't allege legal disability when the complaint was originally filed in 2015, if she was truly legally disabled at that time. And they refiled the same lawsuit in October of 2016. Again, absolutely no allegation of legal disability. Again, she's invoking the discovery rule on both occasions. So, you know, we believe that the plaintiff has to bear the consequences. I'm sorry. Go ahead. We interrupted you. I apologize. No, that's okay. We believe that the plaintiff must bear the consequences of the pleadings, the statements made in the pleadings. We believe there are evident treatment issues and the conduct of her lawyers. Did the trial court ever evaluate the Loyola factors? No. I think Judge Fenis, he thought it, the first time this came before him in April of 2018, his game plan was to enter and continue the motion to relieve the file of first amended complaint and first address our motion on the merits. That's a de facto denial of the filing of the first amended complaint at that time. In other words, let's put that on hold. Let's address the defendant's motion on the merits. And what could have happened and should have happened, respectively, is the guardian, Ms. Goring, should have been substituted as a party plaintiff. The complaint before the court filed in October of 2016 should have been ruled on. The ruling would have been in our favor, violations of statute of limitations, no question about it. And then counsel would have had his motion to relieve the file of first amended complaint in which he alleges legal disability. And we would have opposed that motion and we would have argued it's not timely, it's not proper, res judicata, but it all gets back to the Loyola factors. Res judicata only arises after there's a final judgment. There hasn't been a final judgment in this case because we haven't ruled on it. So res judicata, you may be referring to law of the case, but it's not res judicata. I understand Your Honor's point and you're correct. And my point is there has been finality. Andy, you had a question. You had indicated that the, based on your recitation of parts of the transcript, that the trial judge in granting leave to file the first amended complaint was relatively specific in saying I'm granting you leave to file the first amended complaint basically to change the caption and any other portions which would allow a guardian in place of the previously named patient. Correct. Is that correct? Yes. So is really the error here that the plaintiff exceeded the scope of what she was granted leave to do, she being the plaintiff? Is that your position? Well, I'm going to be fair to the plaintiff. I, I, I, this is my worst fears being true in this case because in April of 2018, when I was there with my combined motion and Mr. Gunsberg was there with his motion for leave to file the first amended complaint alleging for the first time legal disability, I discussed my concern that if my motion wasn't ruled on, this was all going to become about the first amended complaint and legal disability, which I didn't think belonged in the case and I didn't think it was a timely amendment and not about the discovery rule. Everything that I characterized in that hearing as my, would be my worst fears has come true because this is exactly where we ended up. And I think if Judge Venus should have abided by his original decision, which was to rule on our combined motion and then deal with whether or not he'd allow a first amended complaint. So to be fair to the plaintiff, once Judge Murphy, sitting in his place, says, Judge Venus says it's okay for you to file this amended complaint. Mr. Gunsberg obviously uses his first amended complaint as his weapon against us on our arguments directed to the initial complaint. I mean, I only wish Judge Venus had been there that day because I think he would have made clear, as he did at the hearing on the motion to reconsider, that his intention was merely to allow Mr. Gunsberg to have a client, a proper client to represent, not to change the substantive allegation as to the tolling provision on the statute of limitations. So we ended up in a situation where I think in Judge Venus's mind, he truly didn't think it would matter because he figured, well, the defense will have their day in court. We'll get to argue this, and here we are. So to answer your question, Justice Jorgensen, I don't think, I don't know how to say it. I don't begrudge Mr. Gunsberg for being an advocate for his client and for trying to inject the first amended complaint in response to our motion directed to the original complaint. It's just my position that first amended complaint never should have been part of this lawsuit. Legal disability never should have been part of this lawsuit under the Loyola factors. And I think if you go through the four Loyola factors, it squarely falls in our favor on each and every vector. And I know, look, I am mindful as I stand here as an advocate for the defendants, that this court is going to be concerned about, well, what if, and this is a hypothetical for me because it is in dispute when the legal disability began. It's not, in my view, shouldn't be part of the case right now, but it would be in dispute. I know you're mindful of the fact, well, if this woman, Laura Martinez, truly is legally disabled today, and if hypothetically she was legally disabled back in 2012, shouldn't we as an appellate court just sort of say, well, gee, you know, the equities, let's let her have her, you know, let's let it go forward. And I say no. I mean, the law, you know, hard cases make for bad law. She had attorneys for three years who asserted the discovery rule, and then when it became clear after a number of depositions that that wasn't going to toll the limitations period, then came forward for the first time with an allegation of legal disability. And I don't think that's proper. Even if it's true? I don't think it's proper, even if it is true in this case, yes. And I know that sounds harsh, but, you know, people represented by able counsel, and there's case law in this, and it applies to defense attorneys and plaintiff attorneys. Lawyers make mistakes every day, and if somebody looks at this case and says, hey, the plaintiff's lawyer has made a mistake, if they represented a legally disabled person as of 2015 and she'd been legally disabled since November of 2012, they should have asserted that in the complaint. People make mistakes. Lawyers make mistakes. So ultimately her remedy lies in perhaps an action against her prior counsel rather than us saying this case should go forward. Correct. Absolutely. That's why we all carry and are required to carry legal malpractice insurance. I mean, there has to be ‑‑ I guess I'll leave it at this. There has to be finality in these cases. Otherwise, and that's what Justice ‑‑ that's what Watkins and Barnhart and other Seventh Circuit cases, and Reha even, they're all about that. If you don't put the defendant on notice in a timely way originally about a legal disability, you can't pull that out later because otherwise this would just become ‑‑ I'm not saying in every case, but I can envision scenarios like this unfolding all the time, and it's just not fair to the defendants. Thank you for your time. If you have any other questions. No. Thank you. Mr. Gunsberg, do you have malpractice insurance? Do I? Yes, because, as Mr. Cahill indicated, we all should have it. Yes. Yes, I do. You should. It's required. But I would submit, Your Honor, that I'll represent to the court. I'm not a physician, and I'm certainly not a neurologist, and I would submit that it would be hard press for any lawyer to make a determination of competency, and I think that in this case, there has been an adjudication that she's legally disabled, and it came from the Court of Appropriate Jurisdiction, the LaSalle County probate. That was substantially late. Pardon me? That was substantially later? Yes, Your Honor, and counsel didn't get into the discovery that took place between the time when I first became involved in this case, leading up to the point where there was evidence of disability. Counsel took the deposition. Counsel subpoenaed the deposition of Dr. Dusan Stavosky, and during that deposition, he asked questions, and during that deposition it became very clear from Dr. Stavosky, her treating neurologist, that she was under a legal disability and that she was unable to attend to the ordinary affairs of life. When was that? I'm sorry. When was that? When was the deposition? I can't tell you the exact date. Generally. It's in the record, but it was what led me ultimately to have an adjudication. Once I became aware of that, at that point, then I took steps to have a legal guardian appointed, her mother, and it was at that point that I went through the process of having a probate court, make that determination, and immediately, I think it was April 6th of 2018, that the probate court made the adjudication of legal disability. On April 10th, four days later, is when I filed a motion for leave to amend the complaint, to substitute, but also to amend the pleadings to conform with the anticipated proofs. And I do want to respond to what counsel said, that PML does not necessarily cause disability. That's not what Dr. Ta testified to in his deposition. Dr. Ta specifically testified that PML causes two things, death or severe disability. That's his testimony. And we know that Laura Martinez survived. So I've got an affidavit from a qualified neurosurgeon who happens to be world-renowned in his field, who says that she was severely disabled and unable to attend the Ordinary Affairs of Life as of November of 2012. Now, counsel could say, well, Dr. Ta says this or that. All that doesn't create an issue of fact. And so I believe that the affidavit of Dr. Sifosky is uncontroverted, but even if you look at what Dr. Ta said, all it is is an issue of fact. And so... Counsel, let me ask you this. Whether to allow an amended pleading to be filed is within the trial court's discretion, correct? To allow an amended pleading, yes. Okay. And we know from the case law that if the trial court does not exercise its discretion, that is considered an abusive discretion, correct? If he doesn't exercise... If the trial court does not exercise, if the record affirmatively shows that the trial court did not exercise its discretion, that is actually an abusive discretion. I'm not certain that I agree with that, Your Honor, but I... Let's just assume that's the premise of law. Counsel has argued that the trial court in this case never evaluated and analyzed the Loyola factors. Do you agree with that? I disagree. I disagree because in this instance, you know, the First Amendment complaint, you know, appeared for the first time on May 1st. That's not true. I sought leave to file the First Amendment complaint. The very complaint that's on file today, within, I believe it was April 10th of 2018, it was within 4 days of the... of the plaintiff being adjudicated to be legally disabled. I filed it. The court was provided a courtesy copy of it, so the court had the First Amendment complaint. Ultimately, the court entered and continued the motion for leave to file the First Amendment complaint, but then, upon reconsideration, the court was provided yet again a copy of the First Amendment complaint and had that complaint, and so to suggest that... Wait, wait, wait. You skipped a step there. Where is the articulation of the exercise of discretion? I think that's what my colleague is getting to. I'm sorry. And so the... I believe that because the court had the First Amendment complaint and reviewed it and was well aware of the arguments on both sides, because it's articulated in the brief, and what counsel said, we argued about it, the court was well aware of the significance of the First Amendment complaint. True. So I believe that those were... I believe that with regard to the Loyola factors that set forth in my reply brief, that as to the first factor, the amended complaint cured any purported defect in the original and refiled complaints relative to the statute of limitations defense. The second factor... I don't mean to ask you to go through the Loyola factors because your time's up already, but what I'm asking you about is whether the trial... Because all we have from this trial judge is a statement when initially he was inclined to deny the filing of the petition. He said, I don't want to circumvent these arguments that we have pending on the Silmer judgment on the refiled petition. Then we have Judge Murphy appearing out of nowhere and granting it, the leave to file it, with no comment other than, I spoke to Judge Finnis and he said, file it. Then later, Judge Finnis explicitly says, the only reason I allowed it to be filed was to substitute the party. I mean, he says that explicitly in the Motion of Regency. So where is, again, the exercise of the discretion by the trial court in allowing the First Amendment petition to be filed on its merits? I believe that when I filed my motion for reconsideration and set forth all the arguments in favor of allowing the amendment, that was sent to Judge Finnis. He had that. He looked at it. I don't think this was Judge Murphy ruling on his own. I think he specifically tested, or he specifically stated on the bench that I discussed this matter with Judge Finnis. And Judge Finnis, not me, not Judge Murphy, but Judge Finnis decided that he was going to allow the First Amendment complaint. I think that's what's in the record. This isn't a situation. But why was he going to allow it? That's the point. Where was his exercise of discretion? What were the factors that were considered? What did he weigh? What did he find more or less compelling? Your Honor, this is not clear either. And I see this as an odd fact pattern when another judge comes in and says, yeah, I talked to him. He says, granted. Well, I didn't send courtesy copies to the other judges. I sent courtesy copies to Judge Finnis. I cannot sit here and stand here today, Your Honor, and tell you that I know everything that Judge Finnis was thinking at the time. But I can only assume that, as most judges do, that they read the materials and the motions and the pleadings that are submitted to them for review. And he reconsidered. It was a motion for reconsideration, and he reconsidered. But I can only assume that he looked at the factors and understood the factors and made a decision, reversing himself and allowing this to be filed. And so I can't read his mind. I wish I could, but I don't. I can only assume that he read everything and understood it and exercised his discretion, which he had the right to do. I believe that the Loyola Academy, the factors which would support an abuse of discretion are not present under these circumstances. I just wanted to... Well, I think that's probably all I have to say. Oh, just one last thing with regard to the question of notice. Even the original and the refiled complaint specifically alleged that Laura Martinez suffered from PML. The defendant cannot escape the import of PML when the defendant himself testified that he understood, as a neurologist, that PML equated to either death or severe disability. He was served with the complaint, the original complaint. He had to have known that Laura Martinez was severely disabled at that time. So to say that he had no notice of it and the first time he became aware of it is when the plaintiff sought to amend the complaint, I don't think is true. Thank you. I would ask that the court reverse the questions. Thank you. We'll take the case under advisement. Court's adjourned. Thank you.